IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANGEL SALCIDO, personal representative of THE
WRONGFUL DEATH ESTATE OF CRISTAL
CERVANTES, WANDA MARTINEZ,

      Plaintiffs,

vs.                                                                                          Civ. No. 21-01222 KG/JHR

CITY OF LAS VEGAS, LAS VEGAS POLICE
DEPARTMENT, CHIEF ADRIAN CRESPIN,
SGT. ELIAS RAEL, SAN MIGUEL COUNTY, SAN MIGUEL
COUNTY SHERIFF'S OFFICE, UNDERSHERIFF MIKE
PADILLA, DEPUTY JAYME VIGIL, NEW MEXICO
DEPARTMENT OF PUBLIC SAFETY,
NEW MEXICO STATE POLICE, JOHN DOE 1,
LT. HUGO MUNOZ, SGT. MARK LUCERO,
PATROLMAN MIGUEL SENA,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before this Court on a Motion for Summary Judgment by

Defendants City of Las Vegas, Chief Adrian Crespin, and Sgt. Elias Rael (collectively "city

defendants"). (Doc. 37). The Motion is fully and timely briefed. *See* (Docs. 37, 59, 63).

In this case, we have an exceedingly unfortunate and regrettable violent murder. The

second-guessing of the officers' actions and inactions by those who have suffered egregious loss

is understandable. However, this Court must apply the general rule that a city is not liable for the

violent actions of private individuals because neither the city nor its officers created the danger

suffered or increased the vulnerability of the victim to the danger. In addition, although

everyone wishes earlier efficacious action could have prevented the violence, the fact remains

that none of the actions or inactions by the city or its officers shocks the conscience of this Court. As a result, plaintiffs' Due Process claims against city defendants must be dismissed.

In addition, no reasonable jury could find city defendants liable for negligent investigation as there is no duty to investigate crime in any particular manner or time frame and plaintiffs do not allege city defendants ignored the crime in progress. Furthermore, this Court concludes that the behavior and criminal investigative response of city defendants did not cause the battery or death of Ms. Cervantes. Therefore, this Court must dismiss the state law negligence claims as well.

I.      *Background*

      A. *Relevant Factual Background*

At the outset, this Court notes the tragic nature of the facts discussed herein, not only to those who experienced them, but also to their loved ones who may feel obligated to read these words. The facts as discussed herein are undisputed (*see generally*, Doc. 59, pp. 3-5) or interpreted favorably towards non-moving plaintiffs for purposes of this Motion, unless otherwise noted. (Doc. 37). Disputes regarding material facts will be discussed further as necessary in the analysis section, *see infra*.

On Sunday, November 8, 2020, at 3:08 PM, Las Vegas Police Department ("LVPD") Sgt. Elias Rael arrived on scene near 409 Peggy Lane in response to a call for assistance from the San Miguel Sheriff's Office ("SMCSO") following reports that deputies were being shot at. (Doc. 37) at p. 5, Undisputed Material Fact ("UMF") ¶ 1 (citing Ex. 1, Sgt. Elias Rael Affidavit, ¶¶ 4-5, 7-8, Attachment 1, Elias Rael Incident Report, pp. 1, 4); (Doc. 59), p. 3, UMF ¶ 1; (Doc. 63) at p. 3, ¶ 1). On scene, Undersheriff Mike Padilla asked Sgt. Rael to direct traffic away from the east end of Peggy Lane. (Doc. 37) at p. 5, UMF ¶ 1 (citing Ex. 1, Sgt. Elias Rael Affidavit,

¶¶ 4-5, 7-8, Attachment 1, Elias Rael Incident Report, pp. 1, 4)).  Undersheriff Padilla advised Sgt. Rael that deputies were conducting a welfare check on people inside 409 Peggy Lane, but when they approached the house, a male subject later identified as Alejandro Alirez began shooting at them.  *Id.* at UMF ¶ 2 (citing Ex. 1, Rael Affidavit, Attachment 1, BN 000842).  Sgt. Rael then relayed instructions to Ofc. Patrick Maes to set up a perimeter on the east end of Peggy Lane.  *Id.* at p. 6, UMF ¶ 3 (citing Exhibit 1, Rael Affidavit, ¶ 8, p. 4).  New Mexico State Police ("NMSP") also dispatched officers and activated its Tactical Team and Crisis Negotiation Team ("CMT") to respond.  *Id.* at UMF ¶ 4 (citing Exhibit 1, Rael Affidavit, ¶ 17; Exhibit 2, Adrian Crespin Affidavit).

From his cell phone on scene, Sgt. Rael searched for Mr. Alirez's Facebook account and saw that Mr. Alirez appeared to be streaming from inside the house holding a pistol.  *Id.* at UMF ¶ 5.  Sgt. Rael immediately reported the stream to incident command.  *Id.* (citing Exhibit 1, Rael Declaration, ¶ 10, Attachment 1, p. 4, Attachment 2, Videos_173163674525001).  Earlier in the video, Ms. Cervantes is conscious but appears to be severely injured moments before Mr. Alirez accuses her of sexually assaulting or "sticking a beer bottle in" his niece then shoots Ms. Cervantes in the face.  *Id.* at UMF ¶ 6 (citing Exhibit 1, Rael Affidavit, ¶ 10, Attachment 2, 00:00).  The live stream goes black while two more gunshots are heard.  *Id.* at UMF ¶ 7 (citing Exhibit 1, Rael Affidavit, Attachment 2, 01:00).  Mr. Alirez walks over to the living room where Mr. Cervantes is seen lying on the couch seemingly deceased before Mr. Alirez appears to shoot him.  *Id.* at UMF ¶ 8 (citing Exhibit 1, Rael Affidavit, Attachment 1, p. 4, Attachment 2, 02:15).

Mr. Alirez appears to fire two more rounds through a window.  *Id.* at UMF ¶ 9 (citing Exhibit 1, Rael Affidavit, Attachment 2, 02:40).  Mr. Alirez returns to the bedroom where Ms. Cervantes is lying on the bed and comments that a gunshot had blown her eye out.  *Id.* at UMF ¶

10 (citing Exhibit 1, real Affidavit, Attachment 2, 03:05). A couple of minutes after the initial

gunshots, Mr. Alirez is out of view on the live stream in another room, but the sound of a

gunshot is heard. *Id.* at p. 7, UMF ¶ 11 (citing Exhibit 1, Rael Affidavit, Attachment 2, 05:25).

Throughout the live stream, Mr. Alirez is walking around the house and looking out of the

window with his pistol in hand. *Id.* at UMF ¶ 12 (citing Exhibit 1, Rael Affidavit, Attachment

1, p. 4, Attachment 2). Mr. Alirez subsequently announces that he shot a BB gun at officers

outside the house and shows his .45 caliber pistol, or "bear killer," to the camera. *Id.* at UMF ¶

13. Sgt. Rael immediately relates to other officers that Mr. Alirez has a .45 caliber pistol. *Id.*

(citing Exhibit 1, Rael Affidavit, Attachment 2, 14:15).

     Mr. Alirez later explains that the police were coming into the house, so he shot Cristal

Cervantes and Victor Cervantes and encourages viewers to kill their family members. *Id.* at

UMF ¶ 14 (citing Exhibit 1, Rael Affidavit, Attachment 2, 8:35, 39:50). Plaintiffs do not dispute

this fact, but dispute whether the police presence actually was related to Mr. Alirez's motivation

for the shooting. (Doc. 59) at p. 3, UMF ¶ 5. Several minutes later while Mr. Alirez is off

screen, another gunshot is heard in the background. *Id.* at UMF ¶ 15 (citing Exhibit 1, Rael

Affidavit, Attachment 2, 18:25).

     Mr. Alirez later says that he would go to prison or die but that it would be worth it,

repeating his assertion that he had killed two people, showing Mr. Cervantes on the couch. *Id.* at

UMF ¶ 16 (citing Exhibit 1, Rael Affidavit, Attachment 2, 25:05). Although plaintiffs indicate

an intention to dispute this fact, this Court concludes that plaintiffs simply are disputing whether

Mr. Alirez's assertion that he had killed Cristal and Mr. Cervantes was correct. (Doc. 59) at p. 3,

¶ 7 (citing State Defendants' Motion for Partial Summary Judgment No. I, "Exhibit E") ("at

minute twenty-six (26) and second (50) Cristal clearly can be heard breathing and then Alejandro

says, 'no she's still alive'")).  Shortly thereafter, Mr. Alirez says he is going to shoot at officers

again and leaves to another area of the house.  (Doc. 37) at p. 7, UMF ¶ 17 (citing Exhibit 1, Rael

Affidavit, Attachment 2, 27:15).

    Throughout the live stream, Mr. Alirez repeatedly tells viewers that he planned on killing

Victor and Cristal before killing his nieces and nephews, and that someone called the police, so

he had to shoot them.  *Id.* at pp. 7-8, UMF ¶ 18 (citing, *e.g.*, Exhibit 1, Rael Affidavit,

Attachment 2, 00:15, 24:50, 14:15, 16:00, 25:40).  Again, this Court concludes that although

plaintiffs purport to dispute this fact, instead they dispute the correctness of the statements of Mr.

Alirez, referencing other statements he made when he shot Ms. Cervantes.  (Doc. 59) at p. 4, ¶ 9

(citation omitted).  Mr. Alirez appears to read a message from a live stream participant

encouraging him to speak with the police to which Mr. Alirez responds, "F*** that. Those

M************, if they try to run in here, dog, I have bullets, I only have a few left but…"

(Doc. 37) at p. 8, UMF ¶ 19 (citing Exhibit 1, Rael Affidavit, Attachment 2, 39:40).  Sgt. Rael

then tasks another officer to take over monitoring the footage and provide updates as Sgt. Rael

evacuated neighbors on Peggy Lane with LVPD Ofc. Ryan Tafoya.  *Id.* at UMF ¶ 20 (citing

Exhibit 1, Rael Affidavit ¶ 11, Attachment 1, p. 4).  Sgt. Rael and Ofc. Tafoya were evacuating a

resident when they heard a gunshot that seemed to be coming from 409 Peggy Lane prompting

them to start running.  *Id.* at UMF ¶ 21 (citing Exhibit 1, Rael Affidavit, Attachment 1, p. 4,

Attachment 3, AXON__Body_2_Video_2020-11-08_1626, 02:50).

    Less than 45 minutes into the livestream, Mr. Alirez announces that Ms. Cervantes is

dead.  *Id.* at UMF ¶ 22 (citing Exhibit 1, Rael Affidavit, Attachment 2, 42:30).  Plaintiffs attempt

to dispute this fact, but again, this Court concludes that plaintiffs acknowledge that Mr. Alirez

"says Cristal is dead during the Facebook live, [but plaintiffs also note the additional fact that] he

speaks with an officer… after the Facebook live and tells him… that Cristal is still alive." (Doc.
59) at p. 4, ¶ 12 (citation omitted).

LVPD personnel's role during the incident was limited to maintaining a perimeter around
the area, controlling traffic, evacuating neighbors, and then coordinating the Tactical Team's use
of a mine resistance ambush protective vehicle ("MRAP").  (Doc. 37) at p. 8, UMF ¶ 23 (citing
Exhibit 1, Rael Affidavit, ¶¶ 5, 28, Attachment 1, p. 4).  All the decision-making regarding
strategies to neutralize the danger Mr. Alirez posed was left to NMSP command.  *Id.*  Although
plaintiffs purport to dispute these two facts, instead, this Court concludes that plaintiffs do not
dispute the limited role the city officers played, but instead, argue about whether the officers
should have done more and had the authority to do more.  (Doc. 59) at p. 5, ¶ 13.

LVPD Chief Adrian Crespin was never on scene and monitored the situation offsite.
(Doc. 37) at p. 8, ¶ 25 (citing Exhibit 2, Crespin Affidavit).  At the time of the incident, LVPD
had suspended its tactical response team, so the team was not available for use.  *Id.* at p. 9, ¶ 26
(citing Exhibit 2, Crespin Affidavit). Plaintiffs only dispute this fact "to the extent that discovery
has not been conducted," and they have not had the opportunity for depositions to confirm for
themselves that this fact is true.  This Court concludes that plaintiffs have not raised a genuine
dispute about a material fact.

### B.  Procedural History

Angel Salcido, personal representative of the wrongful death estate of Cristal Cervantes,
and Wanda Martinez, ("plaintiffs"), filed a complaint against city defendants that was removed
to this Court on December 29, 2021.  (Doc. 1).  Plaintiffs allege a Constitutional substantive Due
Process violation against city defendants via Section 1983.  U.S. Const. amend XIV; 42 U.S.C. §
1983.  (Doc. 19 (amended complaint, Count I)) at ¶¶ 67-138.  Also, plaintiffs allege state law

claims for negligent investigation resulting in battery and wrongful death under the Tort Claims

Act, as well as negligent training, supervision and retention; and loss of consortium.  (Doc. 19

(amended complaint, Counts II-IV)) at ₱₱ 139-67.  On May 2, 2022, city defendants filed the

Motion for Summary Judgment at bar, which, is fully briefed.

II.      *Standards of Law*

   A.  *Summary Judgment*

   Summary judgment should be granted if the movant establishes that there is no genuine

dispute of material fact "and that the movant is entitled to judgment as a matter of law." *Sawyers*

*v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)).  A fact is

considered material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if the evidence

is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Id.*

   The parties must support factual allegations with evidence and the Court is free to

consider materials such as depositions, documents, and affidavits.  Fed. R. Civ. P. 56(c)(1)(A).

"[A] party seeking summary judgment always bears the initial responsibility of informing the

district court of the basis for its motion and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  Once the movant meets this burden, the nonmovant is required to put

in the record facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248.

   In applying this standard, the Court resolves all doubts against the movant, construes all

admissible evidence in the light most favorable to the nonmovant, and draws all reasonable

inferences in favor of the nonmovant.  *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999)

(quoting *Anderson*, 477 U.S. at 255).  However, the nonmoving party cannot rely upon

conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988) (citations omitted); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022) (citations omitted). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

### B. Qualified Immunity

Section 1983 of Title 42 authorizes a private cause of action against any person acting under color of state law for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Individual defendants named in a § 1983 action, however, "may raise a defense of qualified immunity[.]". *Irizarry v. Yehia*, 38 F.4th 1282, 1287 (10th Cir. 2022) (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)). Qualified immunity "creates a presumption that the defendant is immune from suit." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). To overcome this presumption, a plaintiff bears a heavy burden to show both (1) that "the defendant's actions violated a constitutional or statutory right and (2) that right was clearly established at the time of the defendant's complained-of conduct." *Irizarry*, 38 F.4th at 1287-88 (quoting *Truman*, 1 F.4th at 1235).

If the plaintiff fails to satisfy either prong of the qualified immunity test, the court must grant qualified immunity and summary judgment. *McCowan v. Morales*, 945 F.3d 1276, 1282 (10th Cir. 2019) (quoting *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212–13 (10th Cir. 2019)).

"In short, although we will review the evidence in the light most favorable to the nonmoving

party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden;

otherwise, the defendants are entitled to qualified immunity." *Medina v. Cram*, 252 F.3d 1124,

1128 (10th Cir. 2001) (internal citation omitted).

### C.   State Law Negligence under the Tort Claims Act

The New Mexico Tort Claims Act ("NMTCA") waives immunity for battery and

wrongful death "caused by law enforcement officers while acting within the scope of their

duties." NMSA 1978 § 41-4-12 (Cum. Supp. 2020).  Furthermore, Section 29-1-1 imposes an

affirmative duty to investigate; and officers can be held liable if their "conduct was negligence

that proximately caused" injury. *Schear v. Board of County Commissioners*, 101 N.M. 671, 677

(1984) (citing NMSA 1978 § 29-1-1 (Repl. Pamp. 1994) (declaring it to be the duty of every

peace officer "to investigate all violations of the criminal laws of the state which are called to the

attention of any such officer or of which he is aware")).  The New Mexico Supreme Court noted

concerns about strict liability and concluded it does not apply: "Liability will not attach until all

of the elements of negligence have been proved, including duty, breach of duty, and proximate

cause." *Id.* at 676.

In *Schear*, the New Mexico Supreme Court held that "a governmental entity and its law

enforcement officers may be held liable, after receiving notice, for negligently failing to take

adequate action to protect a citizen from imminent danger and injuries." 101 N.M. at 672

(interpreting NMSA 1978 Section 29-1-1 (replacement pamphlet 1979), NMSA 1978 § 41-4-12).

The court noted that although the determination of whether negligence occurred generally is a

question for the jury, whether any duty exists as an initial determination "is a question of law for

the courts to decide." *Id.* (citations omitted).  The court further interpreted the clause "when

caused by law enforcement officers," noting that it does not require commission of the tort by the officer, "but instead has the usual meaning of 'proximate cause' as a requirement for liability in an ordinary negligence case." *Id.* at 673 (citing *Methola v. County of Eddy*, 95 N.M. 329, 332 (1981)).

III.   *Due Process*

Plaintiffs allege a Constitutional substantive Due Process violation against city defendants via Section 1983. U.S. Const. amend XIV; 42 U.S.C. § 1983. (Doc. 19 (amended complaint, Count I)) at ¶¶ 67-138.

A plaintiff "must 'produce facts sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred'" to overcome the presumption that a defendant is protected by qualified immunity. *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (quoting *Pueblo Neighborhood Health Ctrs., Inc.*, 847 F.2d at 646). Only if the plaintiff meets this burden does the defendant "bear the usual summary judgment movant's 'burden of showing that no material issues of fact remain that'" defeat the claim of qualified immunity. *Id.* (quoting *Pueblo Neighborhood Health Ctrs., Inc.*, 847 F.2d at 646); *see also Koch*, 660 F.3d at 1238.

A.  *Due Process Claims*

Plaintiffs claim violation of Ms. Cervantes' Fourteenth Amendment substantive Due Process right "to be free from a government employee affirmatively placing her in a position of actual, particularized danger." (Doc. 19) at ¶ 103. Plaintiffs also claim violation of Ms. Cervantes' Fourteenth Amendment substantive Due Process rights through the failure by all defendants to investigate competently and to take all appropriate actions regarding the known and foreseeable criminal violations by Mr. Alirez. *Id.* at ¶ 70. Finally, as relevant to this claim

10

and Motion, plaintiffs allege that city defendants Chief Adrian Crespin and Sgt. Elias Rael
"committed an affirmative act" when they did not "competently investigate and take appropriate
action on known and foreseeable criminal violations of law of third parties" and "by failing to
evaluate properly the particular on-going vulnerability to Cristal Cervantes, to impose any
command or control over the scene, to devise a tactical plan and communicate to officers on
scene and between Defendant agencies, and other necessary and reasonable actions designed to
avoid preventable injury or death, in response to the known danger presented to Cristal
Cervantes." *Id.* at ¶ 104.

   B.  *Due Process Analysis*

   This Court summarizes plaintiffs' Due Process claims noted above as alleging that
defendant city officials failed to act appropriately, and Ms. Cervantes died as a result. *See id.* at
¶¶ 70, 103-04.  In contrast to plaintiffs' position, and despite the unquestioned tragic nature of the
events, plaintiffs acknowledge the general rule that "state officials are not liable for acts of
private violence." (Doc. 59) at 9 (citing *DeShaney v. Winnebago County Department of Social
Services*, 489 U.S. 189 (1989)).

   1.  *Lack of Exceptional Circumstances*

   Plaintiffs argue that an exception applies to this matter, that being, a state official may be
liable when such state actor "affirmatively acts to create, or increase a plaintiff's vulnerability to
danger from private violence." *Id.* at 10 (citing *T.D. v. Patton*, 868 F.3d 1209, 1221 (10th Cir.
2017) (quoting *Currier v. Doran*, 242 F.3d 905, 923 (2001) (citing *Uhlrig v. Harder*, 64 F.3d
567, 572 & n.1 (10th Cir. 1995)))).

11

a. *No Creation of the Danger*

Plaintiffs note that under the danger-creation theory, they must show that a state actor "affirmatively acted to create or increase a plaintiff's vulnerability to, danger from private violence." *Id.* (citing *Currier*, 242 F.3d at 923). Plaintiffs seeking to hold state actors liable for private violence also must demonstrate:

> (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way;
> (2) plaintiff was a member of a limited and specifically definable group;
> (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm;
> (4) the risk was obvious or known;
> (5) defendants acted recklessly in conscious disregard of that risk; and
> (6) such conduct, when viewed in total, is conscience shocking.

*Id.* (quoting *TD v. Patton*, 868 F.3d 1209, 1222 (10th Cir. 2017) (quoting *Currier*, 242 F.3d at 918)).

Plaintiffs contend that defendants "affirmatively acted to create or increase Christal Cervantes' vulnerability to danger from private violence." *Id.* Plaintiffs contend that the affirmative actions consist of "watching Facebook live;" being aware that the Tactical Team was far away; being aware that Ms. Cervantes was alive; having greater than exercised authority; limiting its role to "maintaining a perimeter, controlling traffic, evacuating neighbors, and eventually providing the MRAP unit for the [Tactical] team." *Id.* Plaintiffs contend the city defendants "made the affirmative decision not to act..." *Id.* at 11.

City defendants contend that there may be "many hypothetical scenarios in which Chief Crespin and Sgt. Rael could have acted differently, [however] Due Process did not obligate them to, and virtually any effort to enter that house would have been even more disastrous." (Doc. 37) at 14 (citations omitted)." *Id.* at 11. They contend that the officers would have been risking their own lives and the lives of neighbors "still in close proximity without any viable opportunity to

save Ms. Cervantes." *Id.* (citations omitted).  City defendants argue that "Chief Crespin and Sgt.

Rael did not injure Ms. Cervantes or cause the harm that took her life, and Due Process did not

require them to do more than they did." *Id.* (citing UMF ¶¶ 1-3, 5-6, 20-21, 23-23; *Martinez v.*

*Uphoff*, 253 F.3d 1130, 1135 (10th Cir. 2001) ("inaction in the face of known dangers or risks is

not enough to satisfy the danger-creation theory's conscience shocking standard"); *Uhlrig*, 64

F.3d at 572 ("state actors are generally only liable under the Due Process Clause for their own

acts and not for private violence").  For the reasons discussed below, this Court finds city

defendants' arguments persuasive.

Plaintiffs do not explain how the city defendants' actions or limiting their role created or

increased any risk to Christal Cervantes' vulnerability to danger.  Plaintiffs are attempting to hold

city defendants liable for failing to take actions they second-guess should have been taken, not

for acting affirmatively.  Similarly, although plaintiffs discuss authority under state law for

hypothesized potential actions that could have been taken, plaintiffs do not connect logically any

of the actual actions of an officer with any creation or increase in Christal Cervantes'

vulnerability to danger.  They also do not cite any caselaw with similar facts found to be a Due

Process violation of rights such that the officers would have been put on notice that their

behavior was actionable and improper.  In contrast, in their reply, city defendants cite *DeShaney*

*v. Winnebago County Department of Social Services*, 489 U.S. 189, 197 (1989).  (Doc. 63) at 8

(also citing *Gray v. University of Colorado Hospital Authority*, 672 F.3d 909, 916 (10th Cir.

2012) (the "state-created danger doctrine *necessarily involves affirmative conduct* on the part of

the state in placing the plaintiff in danger")) (other citation omitted).

In *DeShaney*, a child was alleging that social services deprived him of his substantive

Due Process rights "by failing to intervene to protect him against a risk of violence at his father's

hands of which they knew or should have known." 489 U.S. at 193. The Court instead
concluded that a state's failure to protect an individual "against private violence simply does not
constitute a violation of the Due Process Clause." *Id.* at 197. The relevant state actors in
*DeShaney* even had proclaimed specifically "by word and by deed," the intention to protect the
child from the danger from his father and such affirmative proclamation still was insufficient to
allow liability against the state. *Id.*

Plaintiffs have not alleged any actions by any city defendants implicating substantive Due
Process rights based on the unfortunate death of Christal Cervantes. As all factors of the test
must be met for plaintiffs to hold city defendants liable, failure to allege properly affirmative
action by city defendants that created or increased the danger to Ms. Cervantes is dispositive and
fatal to plaintiffs' Due Process claim against city defendants. *See Patton*, 868 F.3d at 1222
(discussing factors for exception to the general rule of no state liability for third-party violence)
(quoting *Currier*, 242 F.3d at 918). The Motion must be granted on the Due Process claims.

In addition, plaintiffs also cannot meet the final factor that must be met for plaintiffs to
overcome the general rule, that is, conscience shocking behavior. *See id.* For behavior to reach
the level of shocking the conscience, it must have an element of the outrageous, the truly
conscience shocking. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222-23 (10th Cir.
2006). For example, "a plaintiff must do more than show that the government actor intentionally
or recklessly caused injury to the plaintiff by abusing or misusing government power."
*Camuglia*, 448 F.3d at 1222 (quoting *Moore v. Guthrie*, 238 F.3d 1036, 1040 (10th Cir. 2006)).

Plaintiffs argue that the facts presented in this case entail conduct that satisfies the
conscience-shocking standard. (Doc. 59) at 8-9 (citing *County of Sacramento v. Lewis*, 523 U.S.
833, 853 (1998). Plaintiffs note that the "length of deliberation and deference to local policy-

making bodies are factors in the conscience-shocking analysis." *Id*. at 13-14 (citing *Green v. Post*, 574 F.3d 1294, 1300, 1303 (10th Cir. 2009)).   Plaintiffs note that state officials can be held liable when it is demonstrated they were subjectively aware of a substantial risk of serious harm to a plaintiff and they have the opportunity for reflection and unhurried judgments. *Id*. at 9 (citing *Green*, 574 F.3d at 1301).  This Court takes these factors into consideration, but still finds that even under the standard suggested by plaintiffs, no reasonable jury could find any of city defendants' conduct to be deliberately indifferent.

In response to city defendants' Motion and assertion that their behavior did not shock the conscience, plaintiffs purport to assert facts supporting their position. *Id*. at 13-14.  Plaintiffs contend that city defendants "were in a unique position to uphold Cristal Cervantes' substantive Due Process rights [as] they were aware of the fact that she was still alive [and] they had a window into the house at 409 Peggy Lane via the Facebook live stream." *Id*. at 14.  Given these factors and the fact that "they had the authority to use chemical agents and specialized weapons to handle hostage and barricaded persons situations," but did not exercise such authority or did not exercise it sooner, their behavior "is egregious and outrageous to the extent of shocking the judicial conscience." *Id*. at 14-15.  Plaintiffs contend that because city defendants "had two hours of time to reflect continuously about whether they were doing enough to decrease her vulnerability to private violence," their behavior is conscience-shocking. *Id*. at 15.

Plaintiffs' frustrations regarding this emotionally disturbing event are very understandable.  However, although it is possible city defendants did not act perfectly, none of the alleged actions or inactions, individually or in total, in the context as presented by plaintiffs, rise to the level of shocking to the conscience.  Based on a review of the undisputed facts and all disputed facts resolved in favor of plaintiffs, this Court concludes that as a matter of law, city

defendants' behavior in total (and regarding the actions noted and alleged by plaintiffs) could not

be found by any reasonable jury to shock the conscience and are not shocking to the judicial

conscience.  Although the entire event, including the violent actions of Mr. Alirez, is shocking

and regrettable, city defendants' behavior could not shock the conscience of any reasonable set of

jurors.  Therefore, this conclusion of law provides an alternative basis for this Court to grant city

defendants' Motion on the Due Process claims.  For this independent reason, plaintiffs' Due

Process claims against the city defendants fails and city defendants' Motion on this claim shall be

granted.

    b.  *Lack of Special Relationship*

    Plaintiffs did not present any argument or allege any facts supporting the other potential

exception to the general rule that a state is not liable for violent actions by a private party, that is,

when there is the existence of a special relationship with a state.  (Doc. 59); (Doc. 37) at 11-12

(arguing city defendants did not have a special custodial relationship with Ms. Cervantes because

she was not incarcerated or in custody at the time of her shooting and death) (citing *Collins v.*

*City of Harker Heights*, 503 U.S. 115, 127 (1992)).  Not only is this exception waived, but also,

this Court concludes as a matter of law that there is no special relationship alleged that can

provide the basis for this exception to the general rule that a state is not liable for violent actions

by a private party.

    2.  *No Clearly Established Violation*

    City defendants argue "clearly established case law did not exist to require Chief Crespin

or Sgt. Rael to do more."  (Doc. 37) at 14 (citing UMF ¶¶ 1-3, 5-6, 20-21, 23-26; *Armijo v.*

*Wagon Mound Pub. Schs.,* 159 F. 3d 1253, 1257, 1264 (10th Cir. 1998); *Bryson v. Edmonds*, 905

F. 2d 1386, 1387-1388, 1392 (10th Cir. 1990) (purportedly, "officers did not create a danger to

hostages held by a deranged post office employee who killed several people despite that an officer prohibited others from entering to assist the victims under the incorrect assumption that the incident was a hostage situation rather than a massacre") (footnote and other non-binding citations omitted)).   For the reasons discussed below, this Court is persuaded by city defendants' argument.  This conclusion provides an alternative basis to grant the Motion for Summary Judgment regarding the Due Process claim against city defendants.

A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Truman*, 1 F. 4th at 1235 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).  "The salient question is whether the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged conduct was unconstitutional." *Reavis Estate of Coale v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)) (other citations and alterations omitted).  Put another way, the Tenth Circuit asks, "whether the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Halley v. Huckaby*, 903 F.3d 1136, 1156 (10th Cir. 2018) (citations and internal quotation marks omitted).

Clearly established law "must remain moored in a specific set of facts" to show that the "violative nature of *particular* conduct is clearly established." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021) (citation omitted).  To that end, the Supreme Court has repeatedly instructed courts "not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (citing *Ashcroft v. al-Kidd*, 563 U. S. 731, 742 (2011)).  Notably, plaintiff bears the burden of citing to the Court what plaintiff thinks constitutes clearly established law. *Crane*, 15 F.4th at 1303 (quoting *Thomas v.*

*Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010)).  As discussed further herein, plaintiffs have

failed to meet this burden.

Plaintiffs, when arguing that Cristal Cervantes' substantive Due Process rights as

presented in their complaint were clearly established at the time of city defendants' behavior, rely

on *Lewis*: "When governmental officials face a situation 'calling for fast action,' only official

conduct done with an intent to harm violates the Fourteenth Amendment."  (Doc. 59) at 8

(quoting *Lewis v. County of Sacramento*, 523 U.S. 833, 850 (1998)).  This Court first concludes

that *Lewis* is distinguishable, as in *Lewis*, the police officer killed a passenger of a vehicle the

officer was pursuing in a high-speed chase.  *See id.* (discussing facts of *Lewis*); *see also Lewis*,

523 U.S. at 837.  Plaintiffs, however, distinguish *Lewis* on a different basis: "The Court focused

its analysis on the fact that the officer's reaction was 'instinctive' behavior arising from a high-

speed pursuit."  (Doc. 59) at 8 (quoting *Lewis*, 523 U.S. at 836).  Plaintiffs contend that because

in this matter city officers had time "to engage in actual deliberation," this Court should apply a

deliberate indifference standard when evaluating Ms. Cervantes' Due Process rights.  *Id.* at 8-9

(citing *Lewis*, 523 U. S. at 851) (other citations omitted).

However, even assuming the less than three hours city officers had here is sufficient time

for actual deliberation, and even applying the standard as presented by plaintiffs, this Court

concludes that the facts as undisputed or alleged properly and interpreted in plaintiffs' favor still

cannot be found by any reasonable jury to entail deliberate indifference to Cristal Cervantes' life

or security.  Plaintiffs acknowledge that in *Perez*, the Tenth Circuit "clarified that liability for

'deliberate indifference' rested upon the luxury of having time to make unhurried judgments, the

chance for repeated reflection, and the lack of complication by the pull of competing

obligations."  *Id.* at 9 (citing *Perez v. Unified Gov't of Wyandotte County/Kansas City*, 432 F.3d

18

1163 (10th Cir. 2005)). This Court already has discussed the undisputed material facts as well as

the facts specifically alleged by plaintiffs in their response to city defendants' Motion, *see supra*.

As a matter of law, when interpreted in favor of plaintiffs, these facts cannot be interpreted by

any reasonable jury to be a violation of clearly established law via deliberate indifference or

behavior that shocks the conscience. Plaintiffs have not cited a single case on point with these

facts that could have put officers on notice their conduct entailed a Constitutional violation.

Plaintiffs have not been able to cite any case law even close to being on point such that a

reasonable officer would have been on notice that the behavior described herein violated clearly

established Fourteenth Amendment law. In contrast, city defendants provide multiple cases

where the Tenth Circuit Court of Appeals concluded that facts not unlike those alleged herein did

not entail Due Process violations. (Doc. 37) at 14 (citing UMF ¶¶ 1-3, 5-6, 20-21, 23-26;

*Uphoff*, 265 F.3d at 1132 (no Due Process violation where the widow of a corrections officer

sued the Department of Corrections and others with allegations of deliberate failure to ensure

proper training and supervision of penitentiary personnel and other failures allegedly resulting in

his murder by three inmates executing an escape); *Uhlrig*, 64 F.3d at 567 (no Due Process

violation where closure of a special unit allegedly made more vulnerable an employee

subsequently murdered by an inmate); *see also Armijo*, 159 F.3d at 1263 ("if the danger to the

plaintiff existed prior to the state's intervention, even if the state put the plaintiff back in that

same danger, the state would not be liable because it could not have created a danger that already

existed"); *Bryson*, 905 F. 2d at 1387-1388, 1392 (footnote and other non-binding citations

omitted)). Like the defendants in *Uhlrig*, city defendants here did not intend to injure Ms.

Cervantes, nor were they indifferent to the risk. 64 F.3d at 567. Like the defendants in *Uhlrig*,

city defendants here "did not engage in any conduct that was so egregious, outrageous and fraught with unreasonable risk so as to shock the conscience." *Id.*

This Court concludes that plaintiffs have not alleged a violation of a right that is clearly established or that any violation would be obvious to a reasonable officer based on the undisputed facts or facts that plaintiffs have alleged and emphasized in response to the Motion. Based on city defendants' argument, this Court concludes for this reason as well, city defendants' Motion should be granted as to plaintiffs' Due Process claim.

IV.     *Failure to Investigate /Negligent Investigation*

City defendants contend that "Section 41-4-12 (2020) of the New Mexico Tort Claims Act ("NMTCA") does not require law enforcement officers to embark on a suicidal mission to save a life that likely will be lost during a rescue." (Doc. 37) at 15.  City defendants contend that the LVPD personnel did what they could to bring the situation to an end, but simply were "not in a position to improve the situation, and the city cannot be liable for making a difficult yet reasonable call." *Id.* (citing UMF ¶¶ 2-3, 23-26).   They contend that under this section, officers are liable if they fail "to investigate or take enforcement action against certain persons committing criminal acts." *Id.* (quoting *Wachocki v. Bernalillo City Sheriff's Dep't*, 147 N.M. 720, 728 (N.M. Ct. App. 2009); *Torres v. State*, 119 N.M. 609, 612 (N.M. 1995)).  City defendants contend that negligent investigation claims like those brought by plaintiffs "require clear proof that an agency failed to act on a reasonable opportunity to prevent an injury." *Id.* at 17.  They contend that none of the code sections cited by plaintiffs "compel officers to act on the theoretical prospect that they could have saved the life of someone under the[se] circumstances [noting that] Ms. Cervantes already had been shot multiple times, including in the head." *Id.* (citations omitted). They contend that it "would have been extremely dangerous to engage in a

20

shootout in a residential area or to force entry into an enclosed space with an armed man who

shot two people, shot at law enforcement, and openly threatened to shoot anyone in the vicinity."

*Id.* (citing UMF ¶¶ 5-21).  City defendants note that plaintiffs are not alleging city defendants

failed to respond to the call and argue that state law did not obligate them "to prevent Ms.

Cervantes' death under such dangerous circumstances."  *Id.* at 19 (citing *Weinstein v. City of*

*Santa Fe*, 1996-NMSC-021, ¶ 34, 121 N.M. 646, 655 (other citations omitted)).

Plaintiffs respond by restating their allegations and arguing that there are genuine issues

of material fact for the jury regarding whether city defendants met their statutory duty imposed

by NMSA 1978 Section 29-1-1.  (Doc. 59) at 16.

A. *Negligent Investigation Claims*

Plaintiffs allege that under NMSA 1978 § 29-1-1, all defendants had a statutory and

common law duty "to investigate all violations of the criminal laws of the state which are called

to the attention of any such officer or of which he is aware," specifically regarding Ms.

Cervantes' safety.  (Doc. 19) at ¶ 140.  Plaintiffs also allege common-law duties on police

officers.  *Id.* at ¶ 142 (citing *Torres v. State*, 195-NMSC-025, ¶ 20, 119 N.M. 609 (common law

purportedly imposes liability on police officers for "harm caused by the negligent performance of

their statutory duty to investigate crime")).  Plaintiffs allege that all defendants failed to develop

a reasonable plan and failed overall to respond and communicate appropriately to the "dynamic"

situation that was not only life threatening to the victims in the residence but also to other

residents in the area as well as the officers on scene.  *Id.* at ¶¶ 144-47.  Plaintiffs complain

specifically about these issues with regards to the availability of the Facebook live stream video

information.  *See id.* at ¶¶ 147-48.  They allege city defendants' failures to respond better resulted

in the death of Ms. Cervantes.  *Id.* at ¶ 149.

B.  *Negligent Investigation Analysis*

Plaintiffs cite *Schear* in support of their argument that there are genuine issues of material fact in dispute regarding whether the city defendants' investigation satisfied their statutory duties. (Doc. 59) at 17 (citing 1984-NMSC-079, ¶ 23, 101 N.M. 671, 677).  Although plaintiffs cite *Schear*, city defendants correctly note that plaintiffs are not alleging that city defendants failed to respond to the call.  *Id*. at 19 (citations omitted).

This Court concludes this matter is distinguishable from *Schear* as in *Schear*, "the Chief of Police [] chose to continue a conversation with a visitor rather than to respond" to witnesses' report of a 12-year-old boy being dragged into a vacant house by an adult male who sexually assaulted the boy.  *See id*.  There are no allegations that city defendants completely ignored at any point in time the events regarding Mr. Alirez shooting Ms. Cervantes.

Furthermore, in *Ruff*, falsely accused and arrested individuals sued officers who allegedly failed to investigate to find the actual perpetrator even though evidence demonstrated the officers knew they were pursuing and prosecuting individuals innocent of the crime.  *Ruff v. Bd of Regents of the Univ. of N.M.*, 2018 WL 565705, at *3, No. 16-CV-1140 MCA/LF (D.N.M. January 24, 2018) (unpublished opinion) (other citations omitted).  Presuming their allegations were true, even after the innocent individuals' attorney provided exculpatory evidence, the defendant officers spoke to the purported victim, "suggesting to her that she was mistaken about details in the video, thus attempting to influence her to 'alter her previous testimony.'"  *Id*.  The investigation ultimately led to the finding that there was "no credible or actionable evidence" against the purported falsely accused and arrested individuals, but only after two of them were indefinitely suspended from playing college football and the third was indefinitely banned from campus.  *Id*.  Nevertheless, the district court granted the motion to dismiss, holding that the

plaintiffs had failed to state a claim under Section 29-1-1.  *Id.* at *21.  The court noted that law

enforcement officers generally have a duty to exercise ordinary care but suggested this duty is

"to members of the public who are at risk of injury by a criminal offender when the officers are

performing or attempting to perform their duties."  *Id.* at *20 (quoting *Cross v. City of Clovis*,

1988-NMSC-045, ¶ 6, 107 N.M. 251).  The court concluded that the plaintiffs had failed "to cite

to any case holding that Section 29-1-1 creates a duty to investigate in a particular manner, and

[did] not find support for such a reading in either the language of Section 29-1-1 or the case

authorities construing the statute."  *Id.*

     This is like the issue presented to this Court here in that plaintiffs complain about the way

city defendants investigated the case.  Like the plaintiffs in *Ruff*, plaintiffs before this Court have

failed to cite any case holding that Section 29-1-1 creates any duty to anyone to investigate

crimes in any particular manner.  *See id.*  This Court finds the reasoning and holding of *Ruff*

persuasive, although it is not binding, nor published, authority.

     In their response, plaintiffs argue that it is for a jury to determine if city defendants'

investigation satisfied their "statutory duty imposed under Section 29-1-1."  (Doc. 59) at 17.

However, there does not appear to be any duty to investigate crime in any particular manner or

time frame.

     In the context of the facts presented here that are undisputed or interpreted in plaintiffs'

favor, this Court concludes as a matter of law that no reasonable jury could find city defendants

liable for negligent investigation as there is no duty to investigate crime in any particular manner

or time frame.  *See Ruff*, 2018 WL 565705 at *20 (plaintiffs failed "to cite to any case holding

that Section 29-1-1 creates a duty to investigate in a particular manner, and the court does not

find support for such a reading in either the language of Section 29-1-1 or the case authorities

construing the statute").  Although plaintiffs contend it is for the jury to determine if a breach of

duty occurred, as they acknowledge, this Court first must determine the presence of a relevant

duty.  *See Schear*, 101 N.M. at 676 ("Liability will not attach until all of the elements of

negligence have been proved, including duty, breach of duty, and proximate cause"); (Doc. 59)

at 16 ("Whether a duty exists is a question of law for the courts to decide") (citation omitted).

   For the reasons stated, this Court concludes that the negligent investigation/failure to

investigate claim against city defendants shall be dismissed.

   V.   *Negligence resulting in battery and wrongful death*

   The NMTCA waives immunity for battery and wrongful death when it is "caused by law

enforcement officers while acting within the scope of their duties."  NMSA 1978 § 41-4-12

(Cum. Supp. 2020).  Regarding causation, under New Mexico law, for behavior to be a "cause"

of an injury, it must be the case that the "injury would not have occurred" without it.  UJI 13-305

(2023) NMRA Causation (proximate cause).  Furthermore, it "need not be the only explanation

for the injury, nor the reason that is nearest in time or place."  *Id.*  "It is sufficient if it occurs in

combination with some other cause to produce the result."  *Id.*

   Section 41-4-12 does not create liability for a claim of general negligence. *See Dickson v.*

*City of Clovis*, 2010-NMCA-058, ¶ 19, 148 N.M. 831 ("no case has held that simple negligence

in the performance of a law enforcement officer's duty amounts to commission of one of the torts

listed in Section 41-4-12") (citing *Lessen v. City of Albuquerque*, 2008 NMCA 85, ¶ 38, 144

N.M. 314); *see also Bober v N.M. State Fair*, 1991-NMSC-031, ¶ 32, 111 N. M. 644, 653-54

(same).  Instead, "allegations of negligence based on one of the torts specified in Section 41-4-12

are appropriate only when a law enforcement officer's negligence allegedly caused a third party

to commit one of the enumerated intentional acts." *Id.* at ¶ 20 (citing *Lessen*, 2008 NMCA 85, ¶ 39).

### A. Negligence resulting in battery and wrongful death claims

In the amended complaint, plaintiffs alleges that city defendants breached their duty to evaluate appropriately "initial accurate and recent information supplied to Deputy Vigil by civilians outlining the high risk for violence at 409 Peggy Lane, [and] by failing to develop a reasonable and proportionate police response to what was known to be a high-risk situation, with known armed suspects and known captives and a known location." (Doc. 19) at ¶ 144. Plaintiffs allege that city defendants "had sufficient time, in the face of known exigencies, to develop a coherent command structure/proportionate tactical plan to approach the situation." *Id.* In their complaint, plaintiffs allege:

> 148. All Defendants breached their duty to evaluate and process properly the tactical insight to be gained by virtue of a continuing real-time livestream of the active shooters' activities, whereabouts, intentions, and respective conditions of live captives inside 409 Peggy Lane. This duty included adapting any command structure/tactical plan for police intervention to the data that should have been processed in real-time from the active shooter himself. This breach included a complete break-down and essential absence in inter and intra-agency communication and communication between supervisory personnel and subordinate personnel, and other reasonable and necessary actions designed to save the lives of the known live captives at Peggy Lane.
>
> 149. The breach of these duties by all Defendants, supervisory and subordinate personnel from each police agency *resulted in the battery* and wrongful death of Crystal Cervantes for which immunity has been waived under the New Mexico Tort Claims Act.

*Id.* at ¶¶ 148-49 (emphasis added).

### B. Negligence resulting in battery and wrongful death analysis

Plaintiffs argue that the jury must decide whether the conduct of city defendants "was the proximate cause of the plaintiffs' injuries." (Doc. 59) at 18. Plaintiffs argue that city defendants "had the authority to use chemical agents and specialized weapons to handle hostage and

barricaded persons situations." *Id*. Plaintiffs contend that it "does not matter that she received a gunshot wound to her head before the defendants were dispatched." *Id*. Plaintiffs argue Ms. Cervantes "could have been saved had defendants upheld their statutory duty…." *Id*. They contend that it is for a jury to determine if city defendants upheld their statutory duty. *Id*.

City defendants reply that "plaintiffs summarily infer that because LVPD had roughly an hour and a half to engage Mr. Alirez and potentially save Ms. Cervantes' life, Sgt. Rael and Chief Crespin necessarily acted with indifference leading to a conscience shocking result." (Doc. 63) at 7 (citation omitted). City defendants contend that the amount of time "Ms. Cervantes lived after Mr. Alirez' fatal gunshot is irrelevant to LVPD, because LVPD was constitutionally prohibited from circumventing NMSP commands." *Id*. (citing N.M. Const. Art. IX, Section 14 ("the police power of this state is supreme over all corporations as well as individuals"); N.M. Const. Art. X, Section 4 (the legislature shall "provide for the formation of combined city and counsel municipal corporations [] each of which shall be known as a 'city and County'").

This Court concludes that as a matter of law, no reasonable jury could find that the behavior of city defendants caused the battery to Ms. Cervantes resulting in her death because none of the city defendants' alleged behavior caused Mr. Alirez to shoot Ms. Cervantes. *See Dickson*, 2010-NMCA-058, ¶ 20, 148 N.M. 831 ("allegations of negligence based on one of the torts specified in Section 41-4-12 are appropriate only when a law enforcement officer's negligence allegedly caused a third party to commit one of the enumerated intentional acts") (citing *Lessen*, 2008 NMCA 85, ¶ 39); *see also* (Docs. 37, 59, UMF ¶¶ 1-3, 21-26). Neither did the inactions or alleged poor agency and officer response cause the battery and wrongful death.

For the reasons stated, this Court concludes that the negligence resulting in battery and wrongful

death claim against city defendants shall be dismissed.

VI.   *Negligent Training*

Although the NMTCA waives immunity for negligent training and supervision by a law

enforcement officer that causes the commission by a subordinate law enforcement officer of a

tort listed in Section 41-4-12, city defendants contend that "LVPD personnel did not commit a

tort to justify negligent hiring, supervision, or training claims against city defendants." (Doc. 37)

at 20 (citing *Lessard v. Coronado Paint and Decorating Ctr., Inc.*, 142 N. M. 583, 588 (N.M. Ct.

App. 2007) (outlining factors allowing liability against the employer of a tortfeasor)).   City

defendants argue that plaintiffs "cannot show that any LVPD personnel committed an underlying

tort to proceed on failure to train or supervise claims against Chief Crespin or Sgt. Rael." (Doc.

37) at 21 (citing *Spencer v. Health Force, Inc.*, 237 N.M. 64, 71 (N.M. 2005); UMF ¶¶ 1-3, 5-6,

20-21, 23-26).   Plaintiffs respond that they "have provided substantial evidence to show that

there are genuine issues of material fact regarding whether city defendants committed a tort and

whether the committing of such a tort caused or contributed to Cristal Cervantes' death." (Doc.

59) at 20.

For the reasons stated, this Court concludes that the claim for negligent hiring, training,

and supervision against city defendants must be dismissed (Count III).   The claim for Loss of

Consortium (Count IV) also is a claim depending on the existence of another tort, and so too,

must be dismissed.   *See* (Doc. 19) at ¶ 163 ("all defendants … caused the Battery and Wrongful

death of Cristal Cervantes"), ¶ 167 ("As a direct and proximate cause of the negligence of all

defendants, Plaintiff Wanda Martinez suffered damages to include emotional pain and suffering

and loss of consortium").

*VII.    Conclusion*

For the reasons discussed, this Court concludes that no reasonable jury could find city defendants liable for negligent investigation as there is no duty to investigate crime in any particular manner or time frame.  Furthermore, this Court concludes that the behavior and investigation of city defendants did not cause the battery or death of Ms. Cervantes.  Therefore, this Court grants city defendants' Motion for Summary Judgment on all claims:

1) City defendants' Motion for Summary Judgment is granted; and

2) Plaintiffs' Due Process claim (Count I); negligent investigation claim (Count II); negligence resulting in battery and wrongful death claim (Count II); negligent hiring, training, and supervision claim (Count III); and consortium claim (Count IV) against city defendants are dismissed with prejudice; and,

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE